# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DONALD LEE MCDONALD (N-23082), | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 13 C 2046 |
| | ) | |
| WARDEN HARDY, et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Donald Lee McDonald ("Plaintiff") filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging that officials at Stateville Correctional Center ("Stateville") violated the Eighth Amendment by limiting his recreation time and denying him a low cholesterol diet. Plaintiff also asserts that Defendant Salvador Godinez (the Director of the Illinois Department of Corrections) violated his right to equal protection by offering additional yard time and medical diet privileges to maximum security prisoners housed at Menard and Pontiac Correctional Centers, compared to maximum security prisoners housed at Stateville. Finally, Plaintiff contends that Stateville's job assignment system aggravated his medical conditions. Defendants Godinez, Marcus Hardy (Stateville's warden at the relevant time), and Daryl Edwards (Stateville's assistant warden of programs at the relevant time) have moved for summary judgment. For the reasons stated below, the motion is granted in its entirety.

### I. BACKGROUND

The following facts are taken from Defendants' Local Rule 56.1 Statement of Material Facts, Plaintiff's response to that statement, and the supporting documentation submitted by the parties, with any relevant disagreements noted. For the purposes of summary judgment, the facts

are viewed in the light most favorable to Plaintiff. Moreover, given Plaintiff's pro se status, the court will construe his filings liberally. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014).

Plaintiff has been diagnosed with high cholesterol. He alleges that the lack of low cholesterol diet adversely affects his ability to control his cholesterol. (Defs.' 56.1 (a)(3) Statement at ¶¶ 8, 9; Pl.'s 56.1(b)(3)(B) Statement at ¶ 8.) Plaintiff's high cholesterol is being treated with medication, although Plaintiff contends this medication is ineffective because his cholesterol level remains high. (Defs.' 56.1 (a)(3) Statement at ¶ 9; Pl.'s 56.1(b)(3)(B) Statement at ¶ 9.) No physician has prescribed a low cholesterol diet for Plaintiff in the last several years, although Plaintiff testified that when he was first diagnosed with high cholesterol he was given medication and a diet, and was told he should exercise more. (Defs.' 56.1 (a)(3) Statement at ¶ 10; Pl.'s 56.1(b)(3)(B) Statement at ¶ 10.) Plaintiff testified that his cholesterol level has decreased from 400 to 300 in the past two years. (Dkt. No. 44-1, Pl.'s Dep. At 11:15-19.)[1]

Plaintiff alleges that the limited amount of yard time inmates are allotted at Stateville aggravates his high cholesterol and an arthritic condition. (Defs.' 56.1 (a)(3) Statement at ¶ 12; Pl.'s 56.1(b)(3)(B) Statement at ¶ 12.) Plaintiff testified that his arthritis is "not really" being treated by the doctors at Stateville, but he is prescribed a medication called Mobic. (Dkt. No. 44-1, Pl.'s Dep. at 13:1-10.) Since 2009, no physician has told Plaintiff that he is not getting

---

[1] Although Plaintiff disputes this in his response to Defendants' statement of facts, contending that his cholesterol level has decreased from 400 to 300 over the last sixteen years (Pl.'s 56.1(b)(3) Statement at ¶ 11), he provides no evidentiary support for this statement. Therefore, the court will accept his sworn deposition testimony as undisputed.

enough exercise. (Defs.' 56.1 (a)(3) Statement at ¶ 14; Dkt. No. 44-1, Pl.'s Dep. at 13:23-14:2.)[2] No physician has recently told Plaintiff that he needs more than the allotted recreation time at Stateville in order to control his cholesterol level. (Defs.' 56.1 (a)(3) Statement at ¶ 15; Dkt. No. 44-1, Pl.'s Dep. at 12:7-10.)[3]

Inmates at Stateville are allowed yard time twice a week for two and a half hours at a time, weather permitting. (Defs.' 56.1 (a)(3) Statement at ¶ 16; Pl.'s 56.1(b)(3)(B) Statement at ¶ 16.) Plaintiff can exercise in his cell, although he contends this is difficult because exercising in his cell can cause conflict with his cell mate. (Defs.' 56.1 (a)(3) Statement at ¶ 17; Pl.'s 56.1(b)(3)(B) Statement at ¶ 17.) Plaintiff walks to the dining area twice a day for lunch and dinner. (Defs.' 56.1 (a)(3) Statement at ¶ 18; Pl.'s 56.1(b)(3)(B) Statement at ¶ 18.) Plaintiff also walks to the Health Care Unit for blood draws every three months. (Defs.' 56.1 (a)(3) Statement at ¶ 19; Pl.'s 56.1(b)(3)(B) Statement at ¶ 19.)

Plaintiff has submitted a Statement of Additional Material Facts and Defendants have not filed a response to this statement. However, these additional "facts" largely consist of Plaintiff's citation to various sources regarding the importance of exercise to treat arthritis and high cholesterol, including WebMD. Plaintiff also cites the American Bar Association's Treatment of Prisoner Standards, Standard 23-3.6, which states, in relevant part, that:

---

[2] Although Plaintiff attempts to dispute this fact, he bases his denial solely on the fact that the doctors at Stateville who diagnosed him with arthritis told him that exercise was necessary to treat the condition. (Dkt. No. 44-1, Pl.'s Dep. at 14:8-12.) Therefore, the court accepts this statement as true.

[3] As with his arthritis, Plaintiff attempts to dispute this, but contends only that when he was first diagnosed with high cholesterol, he was told that he needed to exercise. (Pl.'s 56.1(b)(3)(B) Statement at ¶ 15.)

> Correctional authorities should provide all prisoners daily opportunities for significant out-of-cell time and for recreation at appropriate hours that allows them to maintain their physical health and, for prisoners not in segregated housing, to socialize with other prisoners. Each prisoner, including those in segregated housing, should be offered the opportunity for at least one hour per day of exercise, in the open air if weather permits.

ABA Treatment of Prisoner Standards, Standard 23.3.6(b).

Plaintiff also cites the Illinois Administrative Code, 20 Ill. Admin. Code § 502.30, which provides that "Medical diets shall be made available to committed persons as prescribed by a Department physician or a licensed physician authorized by the Department to be a committed person's attending physician." Finally, he cites 730 ILL. REV. STAT. § 5/3-7-2(c), which provides:

> All institutions and facilities of the Department shall provide facilities for every committed person to leave his cell for at least one hour per day unless the chief administrative officer determines that it would be harmful or dangerous to the safety or security of the institution or facility.

730 ILL. REV. STAT. § 5/3-7-2(c). The inclusion of these secondary materials in Plaintiff's Statement of Additional Material Facts is inappropriate, as the purpose of this statement is to identify facts supporting his claim, not to make factual or legal arguments. *See Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010). Nonetheless, as these materials are referenced in Plaintiff's memorandum in opposition to Defendants' motion for summary judgment (Dkt. No. 51), the court will consider them in that context.[4]

---

[4] The only factual allegation in Plaintiff's Statement of Additional Material Facts is a contention that a physical therapist, Joe Becerra, gave Plaintiff an exercise routine to do in physical therapy in February 2011, before the physical therapy program was cancelled. (Pl.'s 56.1(b)(3)(C) Statement at ¶ 8). No supporting documentation is attached in regard to this program or its cancellation, nor does Plaintiff explain its significance to his claims. Therefore,

4

## II. LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

## III. ANALYSIS

Construed generously, Plaintiff's filings raise four claims: (1) the limitations on his yard time rise to the level of an unconstitutional condition of confinement; (2) the defendants' refusal to provide a low cholesterol diet and allow him more time to exercise outside constitute deliberate indifference to his serious medical needs relating to his cholesterol and arthritis; (3) Defendant Godinez violated his right to equal protection by offering additional yard time and medical diet privileges to maximum security prisoners housed at Menard and Pontiac Correctional Centers, compared to maximum security prisoners housed at Stateville; and (4) Stateville's job assignment system aggravated his medical conditions.

---

the court disregards this statement.

### A. Plaintiff's Eighth Amendment Claims

The Eighth Amendment's proscription on cruel and unusual punishment prohibits punishment that is "totally without penological justification," as well as "deliberate indifference to serious medical needs." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (internal citations omitted). Eighth Amendment claims have both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). Defendants' arguments focus primarily on the objective prong of the test, contending that Plaintiff's allegations about his limited yard time and the lack of a low cholesterol diet do not rise to the level of a constitutional violations. The court agrees.

#### 1. Conditions of Confinement – Limitations on Yard Time

Prison conditions violate the Eighth Amendment when they "deprive inmates of the minimal civilized measure of life's necessities." *Harris*, 839 F.2d at 1235 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The gratuitous infliction of suffering likewise violates the Eighth Amendment. *Id.* (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). To satisfy the Eight Amendment's objective component for a conditions of confinement claim, the alleged deprivation must be "sufficiently serious." *Delaney*, 256 F.3d at 683 (internal citations omitted). Extreme deprivations are required to meet this standard. *Id.* (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). While "inmates cannot expect the amenities, conveniences and services of a good hotel," they are entitled to constitutionally adequate conditions of confinement. *Harris*, 839 F.2d at 1235-36. The constitutional test requires courts to look to "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 1236 (quoting *Rhodes*, 452 U.S. at 346).

6

The subjective component of an Eighth Amendment conditions of confinement claim refers to a defendant's state of mind and requires a showing that the defendant deliberately disregarded a prison condition that presented a serious risk of harm. *See Pyles v. Fahim*, No. 14-1752, 2014 U.S. App. LEXIS 21678, at *12 (7th Cir. Nov. 13, 2014) (citing *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008)). A prisoner can meet this standard by showing that a prison official knew of a hazardous condition and "'turned a blind eye to it.'" *Id.* (quoting *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996)).

With respect to Plaintiff's claim that inmates at Stateville are allotted insufficient yard time, Plaintiff does not point to evidence indicating that the limitation on his yard time adversely affected his cholesterol level or his arthritis. Instead, he asserts that he could not engage in adequate exercise so his high cholesterol worsened, forcing him to take medication for the rest of his life. According to Plaintiff, this might have been avoided if he had exercised more and consumed a better diet. He also asserts generally that more exercise would be beneficial for his arthritis. However, he provides no evidentiary support for these contentions.

The Seventh Circuit has recognized that the long-term denial of out-of-cell exercise opportunities may violate the Eighth Amendment. *See Delaney*, 256 F.3d at 683-84 ("Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being."). However, such a deprivation must be sufficiently serious, and present a threat to the health of the prisoner, in order to rise to the level of a constitutional violation. *Harris*, 839 F.2d at 1236 (citing *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)); *see Winger v. Pierce*, 521 Fed. App'x 569, 574 (7th Cir. 2013) ("We have held only that denying opportunities for exercise may violate the Eighth Amendment

7

"'in certain limited circumstances where movement is denied and muscles are allowed to atrophy and the health of the individual is threatened.'") (internal citations omitted).

In *Harris*, for example, the Seventh Circuit rejected an Eighth Amendment claim brought by an inmate who spent 28 days in segregation without yard privileges. 839 F.2d at 1236. The court observed that the inmate retained the ability to move about in his living unit, and that no evidence was presented that showed a long-term threat to the inmate's heath. *Id.; see also Gruenberg v. Schneiter*, 474 Fed. App'x 459, 462–63 (7th Cir. 2012) (rejecting claim based on denial of exercise where claimant presented no admissible evidence tracing alleged muscle pain and depression to the exercise restriction); *Thomas v. Ramos*, 130 F.3d 754, 762–65 (7th Cir. 1997) (affirming summary judgment for prison officials where prisoner was confined in segregation cell for 70 days without outside exercise but had opportunities for movement within his unit).

Here, Plaintiff has yard time twice a week for two and a half hour intervals. He also has other opportunities to move about in his living unit. This is insufficient to establish a constitutional violation. This is particularly true given that Plaintiff has presented no evidence linking any exacerbation of his medical conditions to insufficient outdoor exercise.

This conclusion is not affected by Plaintiff's citation to 730 ILL. COMP. STAT. § 5/3-7-2(c), which states that Illinois prisons shall allow each prisoner to leave his cell for at least an hour a day unless it would be harmful or dangerous to do so. Illinois courts have determined that prison regulations, including statutes, do not confer rights upon prisoners that provide a basis for a constitutional claim. *Duane v. Hardy*, 975 N.E.2d 1266, 1271 (Ill. App. Ct. 2012) ("Other than the fundamental rights afforded them under the United States Constitution, inmates possess only

privileges."). Regardless, this statute does not mandate any particular amount of yard time; rather it speaks only to the amount of time prisoners spend outside their cells. Accordingly, it does not mandate time allotted for exercise, much less yard time. *Id*. Defendants' motion for summary judgment as to Plaintiff's yard time conditions of confinement claim is, therefore, granted.

2. **Deliberate Indifference – Low Cholesterol Diet and Arthritis**

Correctional officials may not act with deliberate indifference to an inmate's serious medical needs. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Deliberate indifference has an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer*, 511 U.S. at 837. A medical need is objectively serious when "the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).

With respect to the subjective component of the deliberate indifference test, a plaintiff must allege that the defendant in question was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837. "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Moreover, prisoners are entitled to "adequate medical care," not

9

"unqualified access to healthcare." *Id*. (internal quotations omitted). This means that a prisoner is not constitutionally entitled to receive the treatment of his choice on demand.

As noted above, Plaintiff is dissatisfied with the Defendants' refusal to provide him with a low cholesterol diet. Plaintiff testified that his cholesterol level has decreased over the last two years, and that his cholesterol is being treated with medicine. He has not identified evidence showing that a doctor has prescribed him a low cholesterol diet or that the lack of such a diet has hindered his ability to control his cholesterol levels. Plaintiff also claims that the amount of yard time he receives has negatively impacted his arthritis.

Plaintiff clearly disagrees with his course of treatment (specifically, the lack of a special diet and his inability to engage in an unspecified additional exercise opportunities). Such disagreement, however, does not demonstrate cruel and unusual punishment. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient."). It may be the case that a low cholesterol diet or more exercise would be medically beneficial. However, the Eighth Amendment requires only "adequate medical care," not the best care possible or the array of options that would be available outside of prison. *Id.*; *Oliphant v. Cook Cnty. Dept. of Corr.*, No. 09 C 3876, 2012 WL 3835818, at *10 (N.D. Ill. Sept. 4, 2012) (granting defendants' motion for summary judgment on inmate's deliberate indifference claim based on his failure to receive a low cholesterol diet where the inmate did not point to evidence linking the lack of such a diet to his cholesterol levels); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (per curiam) (affirming grant of summary judgment to defendants on deliberate indifference claim based on medication and

treatment provided for an inmate's arthritis, and rejecting inmate's contention that "physicians could [have done] better" if they had provided additional testing and treatment ).

Additionally, prison officials – like the defendants in this case – may reasonably rely on the judgment of medical professionals regarding the care provided to an inmate, except where it would be evident to a layperson that the prisoner is receiving inadequate treatment. *Johnson*, 433 F.3d at 1011. It is undisputed that Plaintiff received medication to treat his cholesterol and arthritis. Plaintiff cannot prevail on an Eighth Amendment claim based on the lack of a special diet or allegedly inadequate yard time simply because he believes that he would have benefitted from a different diet or more exercise.[5] *See Ray*, 706 F.3d at 866. Thus, Defendants' motion for summary judgment as to Plaintiff's deliberate indifference claims based on the lack of a low cholesterol diet and allegedly inadequate exercise is granted.

**B.     Equal Protection – Godinez**

Next, Plaintiff argues that Defendant Godinez, the Director of the Illinois Department of Corrections, unconstitutionally discriminated against maximum security prisoners at Stateville by failing to offer additional yard time and medical diet privileges provided to maximum security prisoners housed at Menard and Pontiac Correctional Centers. The court interprets this as an equal protection claim. To establish a prima facie case of discrimination under the equal protection clause, a plaintiff must "show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated

---

[5] McDonald also has a lawsuit pending before this court against certain doctors at Stateville who treated his high cholesterol, alleging in part that their treatment was ineffective and caused him kidney pain. *McDonald v. Wexford Health Sources, Inc.*, No. 09 C 4196. The court expresses no opinion about those issues, which are not before the court in the present case.

differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 2013) (internal citation and quotation omitted).

In his memorandum in opposition to Defendants' motion for summary judgment, Plaintiff argues he is in a protected class because he is disabled within the meaning of the Americans with Disabilities Act (the "ADA"). However, Plaintiff has presented no evidence that he is disabled under the ADA. *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950 (7th Cir. 2000) (citing 42 U.S.C. § 12102(2)) (outlining the requirements to establish disabled status under the statute). Moreover, Plaintiff does not contend that Godinez treats him differently than non-disabled inmates. Instead, he asserts that inmates in other prisons are treated better than inmates in Stateville. This fails to implicate a suspect class. *See Johnson v. Daley*, 339 F.3d 582, 585-86 (7th Cir. 2003) (en banc) ("Prisoners are not a suspect class; conviction of crime justifies the imposition of many burdens."); *see also Lynch v. Aramark Corr. Serv., LLC*, No. 1:13-CV-271 JVB, 2013 WL 5348477, at *1-2 (N.D. Ind. Sept. 24, 2013) (rejecting inmate's equal protection claim based on the fact that prisoners in segregation did not receive apple juice with breakfast like prisoners in general population).

Because Plaintiff has not identified an applicable protected class, the court will evaluate his equal protection claim using the rational-basis standard. *See Sweeney v. Pence*, 767 F.3d 654, 669 (7th Cir. 2014). Plaintiff's belief that it is unfair to treat prisoners at Stateville differently than prisoners at Menard or Pontiac is insufficient to overcome the presumption of rationality afforded to Godinez's decisions about the allotment of yard time or special diets at various prisons. *See Taylor v. Edgar*, 52 Fed.Appx. 825, 827 (7th Cir. 2002) (acknowledging that "an equal protection claim can be based on membership in a non-protected group, such as

12

C-number inmates" but holding that "the treatment in question will be declared unconstitutional only if it has no rational basis . . . which is the case only if no state of facts could reasonably be conceived to justify the discriminatory treatment"). Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

## C. Stateville's Job Assignment System

Finally, in his complaint, Plaintiff briefly alleges that Stateville's job assignment system allows inmates to work for one year at a time before being put on a waiting list for several years. He asserts (with no explanation) that the limitation on his ability to work has aggravated his medical conditions. Plaintiff has not identified evidence showing that the job assignment system negatively impacted his health or rises to the level of a constitutional deprivation. Thus, he is not entitled to relief as to this claim.

## IV. CONCLUSION

For these reasons, Defendants' motion for summary judgment [42] is granted. If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dept. of Corr.,* 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, he may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to

state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

Date: December 18, 2014

/s/
Joan B. Gottschall
United States District Judge